IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL T. FORD,                      §
                                      §
          Plaintiff,                  §
                                      §
v.                                    §        CIVIL NO. H-09-00225
                                      §
MICHAEL J. ASTRUE,                    §
COMMISSIONER OF THE                   §
SOCIAL SECURITY ADMINISTRATION,       §
                                      §
          Defendant.                  §
                                      §

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Docket Entry No. 17). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's Motion for Summary Judgment and **AFFIRMS** the Commissioner's decision.

## I.  <u>Case Background</u>

Plaintiff Michael T. Ford ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") regarding Plaintiff's claims for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq.[2]

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 11, 13, 16.

[2]     Pl.'s Summ. J. Mot., Docket Entry No. 17, p. 1.

## A.    Procedural History

Plaintiff filed for disability benefits on January 27, 2004,[3] alleging disability since March 25, 2003, as a result of asthma, diminished hearing, hepatitis C infection, chronic liver disease, and medical treatments, along with the resulting symptoms and side effects including fatigue, depression, mood changes, muscle and joint pains, and rash.[4]  After Plaintiff's application was denied at the initial[5] and reconsideration levels,[6] he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[7]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on December 6, 2007.[8]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on January 18, 2007.[9]

On November 17, 2008, and again on March 3, 2009, the Appeals

---

[3]    Transcript of the Administrative Proceedings ("Tr.") 71.  As Plaintiff points out, there is some discrepancy in the record with respect to this date.  The Administrative Law Judge's decision and at least one record state that the date of filing was August 13, 2004.  Tr. 32, 42.  This is likely due to a clerical error resulting from confusion with Plaintiff's Disability Report, which is dated August 13, 2004.  Tr. 75-77.  However, Plaintiff did state during his hearing that he filed his disability application in August 2004.  Tr. 327.

[4]    Tr. 100-01.

[5]    Tr. 32.

[6]    Tr. 32.

[7]    Tr. 56.

[8]    Tr. 32.

[9]    Tr. 40.

Council denied Plaintiff's requests for review, thereby making the ALJ's decision the final decision of the Defendant.[10]  Having exhausted his administrative remedies, Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the Defendant's unfavorable decision.

**B.   Factual History**

**1.   Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on April 13, 1954, and was fifty-two years old at the time of the hearing before the ALJ.[11]  He has a high school education.[12]  His past relevant job experience included working as a CNC machine operator,[13] as a non-CNC machine operator,[14] and as a machinist.[15]

**2.   Plaintiff's Testimony**

At the hearing on December 6, 2007, Plaintiff testified that

---

[10]     Tr. Tr. 4, 8.

[11]     Tr. 108, 333.

[12]     Tr. 360.

[13]     "CNC" stands for "computerized numerical control."  Tr. 335. Plaintiff worked at a computer-operated milling center, which cut steel parts using computerized machinery.  Tr. 335-36.  Plaintiff loaded parts, loaded computer programs, ran the jobs, unloaded the parts, cleaned the machines, and helped edit faulty computer programs.  Id.  Plaintiff worked this job full time for a year and a half.  Tr. 337.  He lifted as much as fifty pounds at times during the course of his work.  Tr. 337.

[14]     Plaintiff worked at a machine shop called Ed's Precision Manufacturing for about eight months, where he ran cutoff saws, which cut up larger pieces of metal using an abrasive saw, then gave the rough pieces to other employees to work on other machines.  Tr. 338-39.

[15]     Plaintiff worked for JB Armstrong Machine, Inc., for eleven years, where he ran manual mills and lays before his advancement to a CNC mill.  Tr. 340.

he was unmarried, lived alone in an apartment, and had no children or pets.[16]  He drove a 1990 Toyota Corolla.[17]  He received a monthly disability check from Dearborn Life Insurance Company for approximately $1,462, before taxes, the payments for which were expected to last until he turned sixty-five years old.[18]

Plaintiff complained of cirrhosis of the liver, hepatitis C, and fatigue.[19]  Plaintiff testified that he did not believe he would be dependable for any prospective employer, in large part because of his chronic fatigue.[20]  He had not drunk alcohol since 1980, before which time he had been arrested five times for driving under the influence.[21]  He also had not used illegal drugs since 1980, before which time he had "tried a little of everything from smoking pot to cocaine," which was likely how he contracted his hepatitis C.[22]  Plaintiff did not feel that any of the treatments he had tried for hepatitis C had helped him.[23]

Plaintiff had been treated for depression "on and off" since 1991 by his treating physician, Ali R. Tabrizi, M.D. ("Tabrizi"),

---

[16]    Tr. 333-34.

[17]    Tr. 334.

[18]    Tr. 334-35, 337.

[19]    Tr. 342.

[20]    Tr. 364.

[21]    Tr. 343.

[22]    Tr. 344-45.

[23]    See, e.g., Tr. 375.

with medication, including Prozac and Wellbutrin, although Plaintiff was not taking such medication at the time of the hearing nor had he been for the previous year.[24]  He had never seen a psychiatrist but had seen a psychologist for two months in 1998.[25]

At the time of the hearing, Plaintiff's medications included Prilosec for acid reflux, an Albuterol inhaler for his asthma, and aspirin for his heart.[26]  He had also been taking Flomax for his enlarged prostrate "on and off" for the previous year and a half when he had money to pay for the medication.[27]  Plaintiff also sometimes used a nebulizer at home to help with his breathing.[28] The last time he had seen his treating physician, Tabrizi, was in 2005; Plaintiff claimed that he stopped going because his insurance coverage ended.[29]  He had since only been to a doctor when he fell off his bicycle and injured his shoulder.[30]

Plaintiff slept well, receiving on average seven to eight hours per night.[31]  For breakfast he would usually make himself

---

[24]    Tr. 345-46.

[25]    Tr. 346.

[26]    Tr. 347.

[27]    Tr. 347.

[28]    Tr. 348-49.

[29]    Tr. 371.

[30]    Tr. 371-72.

[31]    Tr. 356.

5

green tea and oatmeal with a banana.[32]  During the day he listened to sports shows on the radio and watched sports on the television.[33] He did not have a cell phone, but he had a computer with no internet service.[34]  To use the internet, he would go to the public library, where he would look up information on his medical conditions and his favorite sports teams.[35]  Plaintiff stated that he was "very limited on the reading."[36]  He did his own cleaning and his own shopping, which included driving back and forth to the store.[37]  In 2003 he traveled to Ohio to visit his mother.[38]

### 3.    Plaintiff's Medical Record

Plaintiff's medical record included a history of hepatitis C, chronic liver disease, asthma, major depressive disorder, irritable bowel syndrome ("IBS"), hemorrhagic spots on his colon, gastroesophageal reflux disease ("GERD"), myocardial injury, muscle pain, bone pain, pruritus, severe fatigue, and hearing loss.[39]

On January 9, 2003, an esophagogastruoduodenoscopy revealed the

---

[32]     Tr. 357.  Plaintiff stated that his diet was not limited by his physician.  Id.

[33]     Tr. 358.

[34]     Tr. 358-59.

[35]     Tr. 359-60.

[36]     Tr. 360.

[37]     Tr. 361.

[38]     Tr. 362.

[39]     Tr. 154, 157, 193, 197, 203, 206.

presence of GERD, diffuse gastritis, ans erosive antral gastritis.[40]

On August 8, 2003, Joseph Galati, M.D. ("Galati"), of St. Luke's Texas Liver Institute, reported that Plaintiff had cirrhosis as a result of his hepatitis C.[41]  Galati noted that Plaintiff had undergone interferon therapy in 1992, 1996, and 2003; that Plaintiff had fatigue, pruritus, and muscle and bone pain; and that there was a possibility that Plaintiff's liver disease might limit his ability to work.[42]

In December 2003, Plaintiff was hospitalized for seven days, where he was diagnosed with a myocardial injury that was most likely the result of myocarditis or pericarditis, hypertensive heart disease, and asthma.[43]  At that time, a CT scan showed no evidence of a pulmonary embolism.[44]  A cardiolite stress test produced a normal resting myocardial profusion scan.[45]  A colonoscopy revealed IBS and hemorrhagic spots on Plaintiff's colon.[46]

On June 28, 2004, a state agency medical consultant, Robert Barnes, M.D. ("Barnes"), reviewed Plaintiff's medical records and

---

[40]   Tr. 227-28.

[41]   Tr. 130.

[42]   Tr. 130.

[43]   Tr. 157.

[44]   Tr. 152.

[45]   Tr. 142.

[46]   Tr. 206.

completed a case assessment.[47]  Barnes concluded that Plaintiff did not have a severe medically determinable physical impairment.[48]

On July 26, 2004, Tabrizi reported that Plaintiff had hepatitis C and IBS, but that Plaintiff's depression had been resolved.[49] Plaintiff had no tenderness, hepastosplenomegaly, or ascites with respect to Plaintiff's GERD, pruritus, fatigue, IBS, and gastrointestinal bleeding.[50]

On October 7, 2004, Mark Lehman, Ph.D. ("Lehman") gave Plaintiff a consultative psychological evaluation at the request of the Texas Rehabilitation Commission.[51]  The results of that examination showed that Plaintiff was clean and well-groomed, had a good social presentation, was clearly articulate, had normal thought processes, had a normal affect, and had an only slightly depressed mood.[52]  Furthermore, Lehman reported that Plaintiff's memory functions were well-developed; his concentration was good; he had no difficulty performing reverse serial sevens; and his intelligence was average.[53]  Lehman's only diagnosis was depression,

---

[47]     Tr. 170.

[48]     Tr. 170.

[49]     Tr. 196.

[50]     Tr. 310.

[51]     Tr. 171-75.

[52]     Tr. 171, 173-74.

[53]     Tr. 174.

which he believed would improve with treatment.[54]

On October 27, 2004, a state agency medical consultant, Jack Anderson, M.D. ("Anderson"), reviewed Plaintiff's medical records and completed a Psychiatric Review Technique Form for Plaintiff.[55] Anderson concluded that Plaintiff did not have a severe medically determinable impairment.[56]   Anderson reported that Plaintiff had only a mild restriction in terms of daily living activities and only mild difficulties in maintaining social functioning.[57]   Anderson also reported that Plaintiff had mild difficulties in maintaining concentration, persistence, and pace, but that there was no evidence that Plaintiff had episodes of decompensation for an extended duration.[58]

On December 7, 2004, Tabrizi again reported that Plaintiff had no tenderness, hepastosplenomegaly, or ascites.[59]

On December 15, 2004, a liver ultrasound showed mild fatty infiltration of the liver and a tiny calculus in the gallbladder.[60]

On July 26, 2005, Plaintiff denied having nausea, vomiting,

---

[54]      Tr. 175.

[55]      Tr. 177-190.

[56]      Tr. 177.

[57]      Tr. 187.

[58]      Tr. 187.

[59]      Tr. 193.

[60]      Tr. 192.

fever, chills, abdominal pain, or fatigue.[61]  Plaintiff was sleeping well at night.[62]   Furthermore, Plaintiff reported not being depressed anymore even though he had run out of anti-depressant medication.[63]  He again had no hepastosplenomegaly, ascites, or bruit.[64]

On November 1, 2005, Tabrizi noted that Plaintiff was depressed, had seen a psychiatrist, and was taking "some medication" for it.[65]  Plaintiff again had no splenomegaly, ascites, or bruit.[66]  Tabrizi also noted that Plaintiff should resume a job and be more active.[67]

On November 7, 2005, Tabrizi reported on an attending physician's statement form in support of Plaintiff's disability that Plaintiff's hepatitis C caused fatigue and depression; that Plaintiff had a severe limitation of functional capacity; that Plaintiff was incapable of even sedentary activity; and that Plaintiff was unable to engage in stressful situations or in interpersonal relations.[68]

---

[61]    Tr. 310.

[62]    Tr. 310.

[63]    Tr. 310.

[64]    Tr. 290.

[65]    Tr. 286.

[66]    Tr. 286.

[67]    Tr. 286.

[68]    Tr. 303-04.

10

### 4.   Vocational Expert Testimony

After reviewing the file and listening to testimony by Plaintiff and the ME, the vocational expert ("VE"), Karen Nielsen, testified that Plaintiff's previous work as a CNC machine operator was listed in the Dictionary of Occupational Titles ("DOT") as skilled with a sedentary exertional level, although she acknowledged that Plaintiff performed the work at a medium exertional level.[69] Plaintiff's work as an abrasive machine operator was semi-skilled and performed at a light exertional level.[70] The VE opined that Plaintiff retained transferable skills from his past work, including his machine operating skills and his knowledge of tools and techniques.[71] None of Plaintiff's past occupations involved transferable skills for working at a sedentary exertional level.[72]

The ALJ asked the VE to assess the vocational ability of a younger individual closely approaching advanced age with a twelfth grade education who required a sit/stand option and who had the following abilities and limitations: an ability to occasionally lift twenty pounds and frequently lift ten pounds; an ability to walk four out of eight hours; an unlimited ability to push and pull; no limitation in gross or fine manipulation; a limited ability to climb

---

[69]    Tr. 365.

[70]    Tr. 366.

[71]    Tr. 367.

[72]    Tr. 41-42.

stairs, ladders, ropes, and scaffolds; no ability to run; a limited ability to withstand dust, fumes, gases, and chemicals; an ability to get along with others; an ability to understand complex instructions; an ability to concentrate and perform complex tasks; and an ability to respond and adapt to workplace changes and supervision.[73]

The VE responded that, considering Plaintiff's past work, such an individual could work as a CNC machine operator according to the DOT.[74]  The VE then opined that, as Plaintiff reported doing the job and as the job was normally done in the Houston area, such an individual could not do such work.[75]  The VE also stated that such an individual could do Plaintiff's past work as an abrasive machine operator, because some such jobs have a sit/stand option for four out of eight hours.[76]

The ALJ next asked the VE to assume a hypothetical person exactly like the person in his first hypothetical, except that the person's exertional ability was limited to occasionally lifting ten pounds and frequently lifting five pounds.[77]  The VE responded that such an individual could not perform any of Plaintiff's past work

---

[73]    Tr. 366-67.

[74]    Tr. 367.

[75]    Tr. 367.

[76]    Tr. 367.

[77]    Tr. 367.

as Plaintiff testified he performed it, but that such an individual could perform such work as it was normally performed, according to the DOT.[78]

## II.   Legal Standards

### A.   Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).  Substantial evidence is described as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Under this standard, the court must review the entire record but may not

---

[78]     Tr. 368.

13

reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. <u>Brown</u>, 192 F.3d at 496.

## B.   Standard to Determine Disability

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan</u>, 38 F.3d at 236. The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings." 42 U.S.C. §§ 423(d)(3), (d)(5); <u>see also</u> <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

   (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

   (2) An individual who does not have a "severe impairment" will not be found to be disabled.

14

(3) An individual who meets or equals a Listing will be considered disabled without the consideration of vocational factors.

(4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

(5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity ("RFC") must be considered to determine if other work can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

## III.   Analysis

### A.   The ALJ's Decision

In his formal decision, the ALJ first noted that Plaintiff had

15

met the disability insured status requirement of the Act from the alleged onset date of disability through December 31, 2007.[79]   The ALJ then followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in substantial gainful activity since March 25, 2003.[80]   At step two, the ALJ found that Plaintiff suffered from three severe impairments: 1) chronic liver disease, 2) cirrhosis, and 3) major depressive disorder.[81]   However, at step three, the ALJ concluded that none of his impairments were of a severity sufficient to meet or equal one of the impairments listed in the regulations ("Listings"),[82] and therefore he was not presumptively disabled under the Act.[83]

The ALJ then took into consideration the information contained in Plaintiff's medical records, as well as testimony presented at the hearing, and concluded at step four that Plaintiff retained an RFC to perform sedentary or light work.[84]   Specifically, the ALJ determined that Plaintiff could walk about four hours in an eight-hour day; required a sit/stand option; could lift and carry ten pounds frequently and twenty pounds occasionally; had a limited

---

[79]     Tr. 34.

[80]     Tr. 34.

[81]     Tr. 34.

[82]     "Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations.   20 C.F.R. Pt. 404, Subpt. P, App. 1.

[83]     Tr. 34.

[84]     Tr. 39.

ability to run and to climb stairs, ropes, ladders, and scaffolds; could tolerate limited exposure to dust, fumes, gases, and chemicals; could get along with others, understand complex instructions, concentrate on and perform complex tasks, and respond and adapt to changes in the workplace and supervision.[85]

Based on Plaintiff's RFC, the ALJ concluded that Plaintiff was capable of performing his past work as a machine operator, which did not require the performance of activities precluded by his RFC.[86] Accordingly, the ALJ did not proceed to step five and found Plaintiff "not disabled," denying his claim for a period of disability under Title II of the Act.[87]

**B.   Summary of the Parties' Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  In his motion for summary judgment, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.  Plaintiff presents seven arguments: (1)(a) the ALJ erred in failing to obtain an updated opinion of a medical expert as to the medical equivalency of Plaintiff's combined impairments; (1)(b) the ALJ erred in failing to consult a medical expert regarding Plaintiff's RFC; (2) the ALJ erred in finding Plaintiff's

---

[85]   Tr. 35.

[86]   Tr. 39.

[87]   Tr. 39-40.

17

IBS, GERD, hemorrhagic spots on his colon, myocardial injury, muscle pain, bone pain, pruritus, severe fatigue, and hearing loss not to be severe; (3) the ALJ's failure to obtain an updated medical expert opinion constituted failure to properly develop the case; (4)(a) the ALJ erred in failing to give controlling weight to the opinion of the treating physician; (4)(b) the ALJ erred in failing to direct Plaintiff to obtain a more detailed report from the treating physician; (4)(c) the ALJ erred in failing to complete the 20 C.F.R. § 404.1527(d)(2) analysis of the treating physician's views before rejecting them; (4)(d) the ALJ wholly failed to acknowledge certain evidence favorable to Plaintiff; (5) the ALJ erred in failing to consider Plaintiff's physical and mental impairments in combination; (6) the ALJ erred in finding that Plaintiff could perform the jobs found by the VE; and (7) the ALJ failed to discuss the side effects from Plaintiff's multiple medications on Plaintiff's ability to work.

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record.  Defendant therefore maintains that the ALJ's decision should be affirmed.

## C.   Step Two and Severity of Impairments

The court first addresses Plaintiff's second argument, that the ALJ erred in finding Plaintiff's IBS, GERD, hemorrhagic spots on his colon, myocardial injury, muscle pain, bone pain, pruritus, severe

fatigue, and hearing loss not to be severe.

At step two of the analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that are severe.  20 C.F.R. §§ 404.1520(c), 416.920(c). Severeness is determined by whether the impairment or combination of impairments significantly limits the claimant's ability to perform basic work activities; an impairment or combination of impairments is not severe when evidence establishes only a slight abnormality that would only have a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (S.S.A. 1985); SSR 96-3p, 1996 WL 374181 (S.S.A. July 2, 1996); SSR 96-4p, 1996 WL 374187 (S.S.A. July 2, 1996).

Plaintiff has not met his burden of proving that any of the above-listed ailments significantly limited his ability to perform basic work activities.  In fact, at the hearing, Plaintiff only argued that his fatigue, cirrhosis of the liver, and hepatitis C were conditions preventing him from working a full-time job.[88]  In his testimony, Plaintiff briefly mentioned many of the ailments which he now argues should have been listed as severe.[89]  None of these ailments, however, was described as disabling.

The court fails to find evidence that the above-listed ailments

---

[88]    See, e.g., Tr. 342.

[89]    See, e.g., Tr. 315-16 (hearing loss); 347 (enlarged prostate); 347-49 (asthma); 371-73 (shoulder injury).

could be considered severe enough to significantly limit his ability to perform basic work activities, and Plaintiff fails to guide the court to any records in support of his assertion.  Accordingly, the court overrules Plaintiff's argument on this point.

**D.  Medical Expert**

The court next considers Plaintiff's first, third, and fifth arguments.  Plaintiff contends that: (1)(a) the ALJ erred in failing to obtain an updated medical opinion of a medical expert as to the medical equivalency of Plaintiff's combined impairments; (1)(b) the ALJ erred in failing to consult a medical expert regarding Plaintiff's RFC; (3) the ALJ's failure to obtain an updated medical expert opinion constituted failure to properly develop the case; and (5) the ALJ erred in failing to consider Plaintiff's physical and mental impairments in combination.

To obtain a disability determination at step three, a claimant must show that his impairments meet or equal one of the impairments in the Listing.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ is responsible for ultimately deciding the legal question of whether a Listing is met or equaled.  SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996); see generally SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); 20 C.F.R. §§ 416.926(e), 416.927(e). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter

of documentation, but the issue is still ultimately reserved for the Commissioner.   SSR 96-5p, 1996 WL 374183, at *3.   Whether the impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from doing any gainful activity.   Id. at *4.   Because a finding of equivalence requires familiarity with the regulations and the legal standard for severity, this issue is also reserved for the Commissioner.   Id. When determining whether an impairment medically equals a Listing, the Commissioner must consider all relevant evidence, not including the claimant's vocational factors of age, education, and work experience, that appears in the record about such impairment, including findings from medical sources.   20 C.F.R. § 416.926(c) (stating that opinions that medical consultants designated by the Commissioner offer on the issue of medical equivalence will be considered).   Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques.   See generally 20 C.F.R. §§ 416.926, 416.927.

An ALJ, as the trier of fact, is not bound to a finding by a state agency medical or psychological consultant or other program physician or psychologist with respect to whether an individual's impairment(s) is equivalent in severity to any of the impairments in the Listings.   SSR 96-6p, 1996 WL 374180, at *3.   "However, longstanding policy requires the judgment of a physician (or

psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given appropriate weight." Id. According to SSR 96-6p:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review. When an [ALJ] finds that an individual's impairment(s) is not equivalent in severity to any [L]isting, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

SSR 96-6p, 1996 WL 374180, at *3.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a Listing. Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). No matter how severe it may be, an impairment does not qualify if it exhibits only some of the specified criteria. Id.

If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is

22

equivalent to a listed impairment. Id. at 531. To do so, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Id. (citing 20 C.F.R. § 416.926(a)). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in duration and severity to the listed findings. See id. A court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. Selders, 914 F.2d at 619-20.

Here, there is no evidence indicating that Plaintiff's severe impairments or combination of impairments met or equaled an impairment in the Listings. At step two the ALJ found that Plaintiff had severe impairments of chronic liver disease, cirrhosis, and major depressive disorder.[90] In making his decision at step three with respect to Plaintiff's mental condition, the ALJ focused on the testimony of Anderson, a state agency medical consultant.[91] On October 27, 2004, Anderson concluded that Plaintiff did not have a severe medically determinable impairment.[92] Anderson reported that Plaintiff had only a mild restriction in terms of daily living activities and only mild difficulties in

---

[90]   Tr. 34.

[91]   Tr. 35.

[92]   Tr. 177.

maintaining social functioning.[93]   Anderson also reported that Plaintiff had mild difficulties in maintaining concentration, persistence, and pace, but that there was no evidence of Plaintiff having episodes of decompensation for an extended duration.[94]   In spite of Anderson's conclusion that Plaintiff only had mild difficulties, the ALJ found that Plaintiff actually had moderate difficulties maintaining concentration, persistence, and pace.[95] With respect to Plaintiff's physical conditions, the ALJ found that none of the treating or examining physicians had made findings equivalent in severity to the criteria of any listed impairment.[96] The court has not found and has not been directed to any evidence that would lead it to upset the ALJ's decision at step three on that basis.

Pursuant to SSR 96-6p, when an ALJ determines that an individual's impairments are not equivalent to any Listing, a DDT or other similar form satisfies the requirement that the ALJ receive expert opinion evidence on the issue into the record.   SSR 96-6p, 1996 WL 374180, at *3.   Here, the evidence in the record before the ALJ includes such documents.[97]   Therefore, the ALJ complied with

---

[93]     Tr. 187.

[94]     Tr. 187.

[95]     Tr. 35.

[96]     Tr. 35.

[97]     See Tr. 75, 78, 86, 94, 99.

this duty under SSR 96-6p.  See, e.g., Barnes v. Astrue, No. H-07-4377, 2008 WL 5348225, at *7-9 (S.D. Tex. Dec. 22, 2008) (unpublished).

Plaintiff complains, however, that the ALJ should have obtained an updated medical opinion from a medical expert, and his failure to do so constituted failure to properly develop the case.[98] Generally, the ALJ's decision to consult a medical expert is a discretionary one.  See Haywood v. Sullivan, 888 F.2d 1463, 1467-68 (5th Cir. 1989).  The ALJ may ask for and consider the opinion of a medical expert on the nature and severity of an impairment or its equivalence to any listed impairment if the ALJ feels it is necessary; however, the final responsibility for deciding whether an impairment meets or equals a listed impairment is reserved to the Commissioner.  Id.; see generally 20 C.F.R. §§ 416.926(e), 416.927(e).  SSR 96-6p requires the ALJ to obtain an updated medical opinion from a medical expert with respect to equivalency under only two circumstances:

> [1] When no additional medical evidence is received, but in the opinion of the [ALJ] . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> [2] When additional medical evidence is received that in

---

[98]   Specifically, Plaintiff avers that "the ALJ has failed to recognize the critical importance of various diagnostic and evaluative procedures in the record and the manifestly positive clinical findings that have been evident in numerous examinations, especially the increasing 'viral load' of Plaintiff's [h]epatitis C, which has, after numerous failed Interferon regimens, rebounded swiftly to precipitous levels."  Docket Entry No. 17, p. 7.

> the opinion of the [ALJ] . . . may change the State
> agency medical or psychological consultant's finding that
> the impairment(s) is not equivalent in severity to any
> impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *4.

Based on the evidence in the record, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.   In addition, the opinion of the ALJ and the evidence in the record indicate that the ALJ did not reasonably believe Plaintiff's impairments might be judged equivalent or that the additional medical evidence regarding Plaintiff's impairments might change the findings of the state agency medical consultant, Anderson, that such impairments were not medically equivalent to any impairment in the Listing.   Thus, the ALJ was not required to get an updated medical opinion on the issue of equivalency. See, e.g., Thomas v. Astrue, No. 6:07-CV-053-C ECF, 2009 WL 2777867, at *4-5 (N.D. Tex. Aug. 31, 2009) (finding that the ALJ did not err in failing to obtain an updated medical opinion on the question of medical equivalence as to the plaintiff's visual impairments even when such issue did not arise until after the state agency medical consultant had reviewed the plaintiff's case and there was no physician or medical expert opinion in the record relating to such issue).

Furthermore, even assuming that the ALJ erred at step three, remand would be necessary only if Plaintiff's substantial rights have been affected.   See Newton v. Apfel, 209 F.3d 448, 458 (5th

Cir. 2000); <u>Brock v. Chater</u>, 84 F.3d 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." (internal quotations omitted)); <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected.").   To be entitled to relief, the plaintiff must establish that not only that the ALJ erred, but also that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision.  <u>Morris v. Bowen</u>, 864 F.2d 333, 335 (5th Cir. 1988).

    In this case, Plaintiff does not refer to any specific impairment in the Listing that is applicable; additionally, he has not presented any specific evidence or argument suggesting that any of his impairments or combination of impairments meet or equal a listed impairment.[99]  Furthermore, the record does not indicate a likelihood or even reasonable possibility that medical equivalence would be found based on Plaintiff's impairments or combination of impairments.   The ALJ sufficiently identified the rationale

---

[99]    Plaintiff has also claimed that the ALJ erred by failing to consult a medical expert with respect to Plaintiff's RFC.  Plaintiff neither points to records in which his doctors opine that Plaintiff's impairments preclude or might preclude him from working, nor briefs the court as to why the ALJ should have consulted a medical expert with respect to Plaintiff's RFC.  Regardless, opinions that a claimant is disabled are not medical opinions but are instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case, and the ALJ is not required to consult a medical expert before making his determination.  20 C.F.R. § 416.927(e).

underlying his adverse finding at step three, and Plaintiff has not demonstrated that he suffered substantial prejudice as a result of any alleged deficiencies in the ALJ's discussion.

Therefore, Plaintiff's foregoing arguments are without merit and, accordingly, the court overrules them.

## E.   Treating Physician's Opinion

In his fourth argument, Plaintiff argues that (a) the ALJ erred in failing to give controlling weight to the opinion of the treating physician; (b) the ALJ erred in failing to direct Plaintiff to obtain a more detailed report from the treating physician; (c) the ALJ erred in failing to complete the 20 C.F.R. § 404.1527(d)(2) analysis of the treating physician's views before rejecting them; and (d) the ALJ wholly failed to acknowledge certain evidence favorable to Plaintiff.

Plaintiff's final argument here essentially states that the ALJ's decision is not based on a complete and accurate review of the evidence.  An ALJ's determination of disability status must be based on the evidentiary record as a whole.  <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1023 (5th Cir. 1990).  The ALJ here states that his decision was made "[a]fter careful consideration of all the evidence."[100] Although this general statement encompassed all of the evidence before him, the ALJ was not required to explicitly discuss all of the evidence and state why he rejected or accepted each fact.  <u>See</u>

---

[100]    Tr. 32.

28

Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)(internal quotations omitted).  However, the ALJ ultimately may give less weight to the medical opinion of any physician when his statements are conclusory, unsupported, or otherwise incredible. Greenspan, 38 F.3d at 237.  When deciding to do so, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion.  See SSR 96-2p.

Here, the ALJ thoroughly summarized the medical evidence provided by Tabrizi, and the court need not here repeat the ALJ's nearly two full pages of discussion of Tabrizi's opinions.[101]  The ALJ was not required to explicitly discuss each medical entry and state why he rejected or accepted each conclusion contained therein. See Falco, 27 F.3d at 164.  The ALJ explicitly recounted why he rejected Tabrizi's medical opinions as controlling, however.  The ALJ found, and the court agrees, that Tabrizi's opinion was unsupported by his objective clinical findings and was inconsistent with the evidence considered as a whole.[102]  The ALJ then discussed

---

[101]    Tr. 36-38.

[102]    Tr. 38.

Tabrizi's treating notes, which the doctor had prepared for his own use, and how they did not support the opinion Tabrizi gave on the form he filled out in support of Plaintiff's claim for disability.[103] The court finds no error here.

Plaintiff also argues that the ALJ should have requested additional information from Tabrizi to support or clarify Tabrizi's opinions where, for example, there appeared to be a conflict or unsupported conclusions. An ALJ is only required to contact a physician if the evidence on the record is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512, 416.912(e). The ALJ here considered evidence from the medical record, from the VE, and from Plaintiff himself, and thus he had an ample record on which to base his decision without needing to contact Tabrizi for additional information. Plaintiff bore the burden of proof on steps three and four of the ALJ's analysis, and it is not the ALJ's responsibility to seek supplementation unless there appear to be "clear gaps in the administrative record." See Newton, 209 F.3d at 458-49; Greenspan, 38 F.3d at 236. There were no such clear gaps in the record here.

Plaintiff also argues that the ALJ needed to explicitly conduct a detailed analysis of the treating physician's views under 20 C.F.R. § 404.1527(d)(2), as detailed by Newton, 209 F.3d at 456, because he ultimately decided to reject Tabrizi's opinion. The

---

[103]    Tr. 38.

Newton court, however, explicitly narrowed its holding to situations wherein the ALJ summarily rejected the opinions of the claimant's treating physician based only on the testimony of a non-specialty medical expert who had not examined the claimant. Newton, 209 F.3d at 458. The court differentiated its holding from situations wherein the ALJ found as a factual matter that one doctor's opinion was more well-founded than another, as well as situations wherein the ALJ weighed the treating physician's opinion on disability against the medical opinion of other physicians who treated or examined the claimant and had specific medical bases for a contrary opinion. Id.

Plaintiff here confuses the deference the ALJ gave to the diagnostic and descriptive opinions of Tabrizi with the conclusions made by Tabrizi with respect to whether Plaintiff was disabled. Even though medical opinions and diagnoses of a treating physician should be afforded considerable weight, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1990)). A medical source's statement that the claimant is "disabled" or "unable to work" does not mean the Commissioner will determine the claimant is, in fact, disabled. Spellman, 1 F.3d at 364 (citing 20 C.F.R. § 404.1527(e)(1)); see also 20 C.F.R. § 416.927(e)(1). The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope

of authority.  <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003).

Here, the ALJ gave great deference to the medical records created by Tabrizi, including his observations and diagnoses of Plaintiff's ailments.[104]  In fact, the only rejected portions of Tabrizi's opinions were those directly related to whether Plaintiff was disabled or unable to work.[105]  Under such circumstances, the determination of disability is not a medical opinion entitled to deference, and the ALJ did not err in failing to give such determination controlling or significant weight.  <u>See</u> <u>Frank</u>, 326 F.3d at 620.

The ALJ is granted the authority to determine which disabilities and limitations are supported by the evidence, and the court should overturn the ALJ's determinations "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  <u>Johnson</u>, 864 F.2d at 343-44 (internal quotation marks omitted); <u>see also</u> <u>Brown</u>, 192 F.3d at 496.  Furthermore, the ALJ's recognition of limitations must be supported by substantial evidence.  <u>See</u> <u>Johnson</u>, 864 F.2d at 343-44.

The ALJ's RFC determination here was supported by substantial evidence and satisfies the standards announced in <u>Myers</u>.  <u>See</u> <u>Myers v. Apfel</u>, 238 F.3d 617, 620-21 (5th Cir. 2001).  "The findings of the Commissioner of Social Security as to any fact, if supported by

---

[104]     Tr. 36-38.

[105]     Tr. 38.

substantial evidence, shall be conclusive . . . ." 42 U.S.C. §
405(g).  The court may not reweigh the evidence or substitute its
judgment for Defendant's judgment.  <u>Brown</u>, 192 F.3d at 496.  Here,
medical reports, cited in conjunction with the ALJ's own appraisal
of Plaintiff's testimony and review of the record, are supported by
substantial evidence and satisfy the <u>Myers</u> standard.  <u>See Beck v.</u>
<u>Barnhart</u>, 205 Fed. App'x 207, 213 (5th Cir. 2006) (unpublished)
(stating that reliance upon medical reports in conjunction with
other evidence satisfies the <u>Myers</u> standard).

A reading of the ALJ's decision shows that he carefully
considered, but ultimately rejected, Plaintiff's treating
physician's conclusions that Plaintiff was disabled, not his
conclusions with respect to Plaintiff's medical conditions.
Accordingly, the court overrules Plaintiff's arguments regarding his
treating physician's opinion.

**F.  Whether Plaintiff Could Maintain Employment**

Next, in his sixth argument, Plaintiff argues that the ALJ
erred in failing to consider that Plaintiff's impairments do not
allow him to maintain employment.

To require an ALJ to make a specific finding regarding the
claimant's ability to maintain employment, <u>Watson v. Barnhart</u>
requires a situation where, by its nature, the claimant's physical
ailment waxes and wanes in its manifestation of disabling symptoms.
288 F.3d 212 (5th Cir. 2002); <u>Perez v. Barnhart</u>, 415 F.3d 457, 465

33

(5th Cir. 2005).  Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination.  <u>Perez</u>, 415 F.3d at 465 (citing <u>Frank</u>, 326 F.3d at 618).

Here, Plaintiff has not made the requisite showing.  For example, as the <u>Frank</u> court illustrated, relevant to the disability determination might be an allegation that a degenerative disc disease causes one to lost movement in one's legs every few weeks. <u>Id.</u>  Plaintiff, however, only generally points to the record stating that there was no evidence that he could both obtain and maintain employment after his impairments became severe, without discussing how those impairments wax and wane in severity.  The meager evidence urged upon the court by Plaintiff on this point does not rise to the level of impairment required by <u>Frank</u>.

Accordingly, the court overrules Plaintiff's arguments on this point.

## G.   Effect of Medication Side Effects on Plaintiff's RFC

Finally, in his seventh argument, Plaintiff argues that the ALJ failed to properly consider his subjective complaints of side effects as a result of his medication in determining his alleged disability.

The ALJ must take into account the effects of medication on a claimant's ability to perform work tasks.  <u>See</u> <u>Loza v. Apfel</u>, 219 F.3d 378, 396-97 (5th Cir. 2000).  Sources used to establish whether a claimant has a medical impairment should include evidence from

34

acceptable medical sources.  See 20 C.F.R. §§ 404.1513, 416.913;
Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).

Here, in support of Plaintiff's assertion that the ALJ failed
to consider the side effects from Plaintiff's medication, Plaintiff
only directs the court's attention to: (1) one page of his own
testimony with respect to his Inferon treatments, and (2) the list
of Plaintiff's medications submitted as part of the medical
record.[106]  With respect to Plaintiff's first point, the court finds
that the ALJ did, in fact, consider the side effects of his Inferon
treatment.[107]  The ALJ clearly discussed Plaintiff's testimony that
the treatment left him exhausted and had given him flu-like
symptoms.[108]  Plaintiff's testimony is undermined by the medical
reports, however, in which there is substantial evidence to support
the ALJ's determination that any impairments caused by medication
were at the most moderate and were properly accounted for in the
RFC.[109]  In fact, the ALJ specifically stated that he was limiting
Plaintiff to sedentary or light work in part to give the greatest
possible weight to his allegations of his subjective symptoms, which
would include his medication side effects.[110]  Credibility

---

[106]    Tr. 270-283, 353.

[107]    Tr. 35-37.

[108]    Tr. 36.

[109]    Tr. 38-39.

[110]    Tr. 39.

determinations are generally entitled to great deference, and in this case, the court finds that the ALJ's credibility determination is supported by substantial evidence. See Newton, 209 F.3d at 459.

With respect to Plaintiff's list of medications, which include lists of possible side effects, the ALJ appropriately did not consider such submissions without corresponding testimony or medical evidence that Plaintiff was experiencing those particular side effects.

Accordingly, the court overrules Plaintiff's arguments on this point.

Having addressed all of Plaintiff's arguments, the court **DENIES** Plaintiff's motion for summary judgment.

**H.   Defendant's Argument**

Defendant asserts in his response that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.

The court recognizes the seriousness of Plaintiff's medical conditions.  However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence. See Carey, 230 F.3d at 135.  The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss v.

36

Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

For the reasons stated above, the court finds Defendant satisfied his burden.  As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence. The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.  Therefore, the court **AFFIRMS** the Commissioner's decision.

### IV.   Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Summary Judgment and **AFFIRMS** the Commissioner's decision.

**SIGNED** in Houston, Texas, this 8th day of March, 2010.

Nancy K. Johnson
United States Magistrate Judge